NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

THERESA L. BURNS, *Petitioner/Appellee,*

*v.*

FRANK L. BURNS, *Respondent/Appellant.*

No. 1 CA-CV 15-0175 FC
FILED 2-23-2016

Appeal from the Superior Court in Maricopa County
No. FC2003-093584
The Honorable Peter A. Thompson, Judge

**AFFIRMED**

COUNSEL

Keil & Keil Law Office, Glendale
By Martin F. Keil, Jr.
*Counsel for Petitioner/Appellee*

Leavell & Rivera, PLC, Phoenix
By Thomas H. Leavell
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

---

**H O W E**, Judge:

**¶1**       Frank L. Burns ("Father") appeals the family court's denial of his motion for relief from judgment under Arizona Rule of Family Law Procedure 85(C) and his petition to retroactively modify child support pursuant to A.R.S. § 25–327(A). For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**       Father and Theresa L. Burns ("Mother") divorced in 2004 and agreed that Father would make monthly child support payments to Mother for their three then-minor children. Two years later, Mother petitioned to modify the child support, which the family court subsequently ordered after Mother and Father attended a court-ordered conference. Four days after the court issued its order, Father notified the family court of a change to his address.

**¶3**       Father paid his child support each month in the following years, but stopped soon after October 2010 when he began a thirty-six month criminal sentence at a federal correctional facility in New Jersey. Father petitioned to modify his child support in March 2011, arguing that although he had continued to make payments through the first months of his incarceration, he could no longer afford to do so because he made only eleven dollars per month at the prison. He neither served the petition to Mother nor took any further action relating to it, however.

**¶4**       The following month, the prison transferred Father to solitary confinement at a segregated housing unit for non-disciplinary reasons. There, Father could not send or receive mail unless specifically designated "Legal Mail." He did not inform the family court of his transfer or the mail restriction. In July 2011, the family court issued Father a notice of its intent to dismiss his petition for lack of prosecution. The court mailed the notice to the address listed on Father's petition. But because Father remained in the segregated housing unit, he did not receive the notice and took no action. Consequently, the family court dismissed Father's petition without

2

prejudice in September 2011. In October, the prison released Father from solitary confinement and transferred him to two other facilities before Father completed his sentence in May 2013.

**¶5**        Nine months later, Father learned through Mother that the family court had dismissed his March 2011 petition and that he had accumulated arrearages during his incarceration. As a result, Father petitioned in June 2014 for a downward deviation of his child support obligation and requested that the deviation apply retroactively to the date of his March 2011 petition. He argued that A.R.S. § 25–327(A), which allows child support modifications when substantial and continuing changes exist, allowed retroactive modification because his incarceration constituted such a change. He also argued that Arizona Rule of Family Law Procedure 85(C), which permits relief from a final judgment for excusable neglect or other justifying reason, entitled him to relief because he had no way of knowing that the court had dismissed his March 2011 petition while he was in solitary confinement.

**¶6**        Mother counter-petitioned, arguing that Father was in contempt of court for failing to pay child support and that any modification to child support would only be effective beginning July 2014 because A.R.S. § 25–327(A) provides that modifications become effective the month following the petition. After hearing oral argument, the family court denied Father's request to modify child support retroactively to March 2011. Instead, the family court ordered an upward deviation of Father's child support obligation effective July, August, and September 2014, when the youngest of the children had become emancipated. The family court found that Father had not established grounds under Arizona Rule of Family Law Procedure 85(C) to justify relief from the dismissal of his March 2011 petition because Father's failure to serve Mother or follow up constituted a lack of diligence, not excusable neglect. Father timely appealed.

## DISCUSSION

**¶7**        Father argues that the family court erred in denying him relief from its dismissal of the March 2011 petition and in denying his subsequent petition to reduce his child support retroactively to March 2011. We review the family court's ruling on a petition to modify child support for an abuse of discretion. *Milinovic v. Womack*, 236 Ariz. 612, 615 ¶ 7, 343 P.3d 924, 927 (App. 2015). Likewise, we review the family court's denial of a motion to relieve from judgment for an abuse of discretion. *Duckstein v. Wolf*, 230 Ariz. 227, 231 ¶ 8, 282 P.3d 428, 432 (App. 2012). However, we review de novo the family court's interpretations of procedural rules and statutes

as questions of law. *Alice M. v. Dep't of Child Safety*, 237 Ariz. 70, 72 ¶ 7, 345 P.3d 125, 127 (App. 2015); *Guerra v. Bejarano*, 212 Ariz. 442, 443 ¶ 6, 133 P.3d 752, 753 (App. 2006). We hold that the family court did not err in applying Arizona Rule of Family Law Procedure 85(C) or A.R.S. § 25–327(A) and did not abuse its discretion in denying relief or Father's petition to retroactively modify child support to March 2011.

### 1. Application of Arizona Rule of Family Law Procedure 85

¶8        Father first argues that the family court erred by improperly applying Rule 85(C)(1)(a) to deny him relief from the court's dismissal of his March 2011 petition because he did not receive actual notice. The rule provides that, "On motion and upon such terms as are just the court may relieve a party . . . from a final judgment, order, or proceedings for . . . mistake, inadvertence, surprise, or excusable neglect." Ariz. R. Fam. L.P. 85(C)(1)(a). Such a request for relief must be made within six months of the judgment. Ariz. R. Fam. L.P. 85(C)(2).

¶9        The family court did not err in its application of Rule 85(C)(1)(a). First, Father did not establish the requisite mistake, inadvertence, surprise, or excusable neglect. Arizona Rule of Family Law Procedure 43(C)(2)(c) provides that service of written notice is complete upon its mailing to the person's last known address. Because the court mailed the notice of intent to dismiss to Father's last known address, no mistake occurred. Father's failure to update his address with the court after being transferred is not excusable neglect. *See Daou v. Harris*, 139 Ariz. 353, 360, 678 P.2d 934, 941 (1984) (stating that a judgment will not be disturbed if acquired because of a party's mere neglect). Second, Father did not seek Rule 85 relief until three years after the family court dismissed his March 2011 petition. Father counters that the six-month period should have tolled until he became actually aware that the family court had dismissed his petition, thus making his motion timely. But Father's interpretation directly contradicts the plain language of the rule, which specifies that a party must seek relief "not more than six (6) months after the *judgment*." Ariz. R. Fam. L.P. 85(C)(2) (emphasis added). Nothing in the rule provides that the six-month period may be tolled. *See generally* Ariz. R. Fam. L.P. 85.

¶10        Father next argues that the family court erred by not alternatively granting relief under Rule 85(C)(1)(f) because of his inability to receive mail while in solitary confinement. The subsection is a "catch-all provision" which permits a party to request relief for any justifying reason. Ariz. R. Fam. L.P. 85(C)(1)(f), (C)(2); *Panzino v. City of Phoenix*, 196 Ariz. 442, 445 ¶ 6, 999 P.2d 198, 201 (2000) (interpreting Ariz. R. Civ. P. 60); *see also*

Ariz. R. Fam. L.P. 1 cmt. (providing that we can consider case law interpreting Ariz. R. Civ. P. 60(C) in interpreting Rule 85 because the rules' language is substantially similar). To obtain this relief, a party must show (1) extraordinary circumstances of hardship or injustice justifying relief and (2) that the reason for relief is one other than the reasons enumerated in the preceding five clauses of Rule 85(C). *Panzino*, 196 Ariz. at 445 ¶ 6, 999 P.2d at 201. A party must file this motion "within a reasonable time." Ariz. R. Fam. L.P. 85(C)(2). In other words, the party must act promptly in seeking relief. *Hilgeman v. Am. Mortg. Secs., Inc.*, 196 Ariz. 215, 220 ¶ 15, 994 P.2d 1030, 1035 (App. 2000). Courts must consider the totality of the facts and circumstances in determining whether relief under this rule is appropriate. *Amanti Elec., Inc. v. Engineered Structures, Inc.*, 229 Ariz. 430, 432 ¶ 7, 276 P.3d 499, 501 (App. 2012).

**¶11**        The family court did not abuse its discretion in denying relief under Rule 85(C)(1)(f) because Father did not show extraordinary hardship or injustice and did not request relief within a reasonable time. First, no extraordinary hardship existed because the family court sent Father notice of its intent to dismiss his petition to Father's last known address, as required. *See* Ariz. R. Fam. L.P. 43 (stating that service is complete upon mailing the written notice "via U.S. mail to the person's last known address"). Nothing in Rule 43 requires the court to do anything beyond completing service to ensure that Father receive actual notice. Although Father could not receive mail not specifically designated "Legal Mail" while in solitary confinement, Father could have notified the family court via "Legal Mail" of his address change or the additional mail restriction. The record shows that Father had updated his address with the court once before, showing that he knew that he needed to update the court and that he knew how to do so.

**¶12**        Second, no injustice existed here. The record shows that, when not in solitary confinement, Father demonstrated the ability to research, draft, and file a petition for modification. The record also shows that Father participated in a child support modification process once before his incarceration, including a court-ordered conference, and therefore should have known that, aside from needing to serve Mother, the modification process required more interaction with the court than merely submitting a petition. *See In re Marriage of Williams*, 219 Ariz. 546, 549 ¶ 13, 200 P.3d 1043, 1046 (App. 2008) (stating that pro se litigants are held to the same standards as attorneys regarding required procedures). The record does not show that Father took any steps to check on the status of his petition in the one-month period between the filing of the March 2011 petition and when the prison placed him in solitary confinement.

Additionally, when the correctional facility released Father from solitary confinement in October 2011, and Father again had access to the same resources and materials, he did not check the status of his petition or whether the family court had attempted to contact him in the preceding months.

¶13 Finally, the record shows that Father did not act promptly in seeking relief. Father completed his sentence in May 2013, but did not move for relief until June 2014. In fact, nothing in the record suggests that Father used reasonable diligence in that one-year period to determine the status of his case. Father counters that the family court wrongly ignored the fact that he did not receive actual notice of dismissal pursuant to Arizona Rule of Family Law Procedure 40. But that rule addresses only service of process for summons and is not applicable here. *See* Ariz. R. Fam. L.P. 40(I). Accordingly, because Father did not show extraordinary hardship or injustice and failed to seek relief in a reasonable time, the court did not abuse its discretion in denying Father relief under Rule 85(C).

## 2. Application of A.R.S. § 25–327(A)

¶14 Father argues finally that the family court failed to properly apply A.R.S. § 25–327(A) to decrease his child support obligation and do so retroactively to the date of the March 2011 petition. But the trial court properly applied the statute here. The statute allows the family court to modify a child support order "only on a showing of changed circumstances that are substantial and continuing" except for any amount that accrued as an arrearage before the date of notice of the modification request. A.R.S. § 25–327(A). The statute further states that "[m]odifications . . . are effective on the first day of the month following notice of the petition for modification . . . unless the court, for good cause shown, orders the change to become effective at a different date *but not earlier than the date of filing the petition for modification . . . .*" *Id.* (emphasis added).

¶15 Here, the family court considered the relevant financial factors and found that no downward deviation was appropriate. Further, the statute specifically precluded the family court from modifying child support effective at any time before the date that Father filed the June 2014 petition—the only valid petition at issue. Father counters that he is nonetheless entitled to retroactive modification because his incarceration and lack of income were, "for all intents and purposes," grounds for automatic modification. But because those are not actual grounds for automatic modification as a matter of law like emancipation or marriage, *see* A.R.S. § 25–503, the limits of A.R.S. § 25–327(A) apply. *See Guzman v.*

*Guzman*, 175 Ariz. 183, 185, 854 P.2d 1169, 1171 (App. 1993) ("[T]he rule against retroactive modification . . . has no application in a situation in which a minor child has become emancipated through marriage."). Thus, because the June 2014 petition is the only valid petition, the family court did not err in denying Father's request to retroactively modify child support to March 2011.

### 3.  Attorneys' Fees

**¶16**      Father requests attorneys' fees and costs pursuant to A.R.S. § 25–324 and upon compliance with Arizona Rule of Civil Appellate Procedure 21(C). After considering the reasonableness of his position, we decline to grant the requests in the exercise of our discretion. *See Fry v. Garcia*, 213 Ariz. 70, 74 ¶ 14, 138 P.3d 1197, 1201 (App. 2006).

### CONCLUSION

**¶17**      For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama